# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DESIGNSENSE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13-CV-010-DGK |
| ) | |
| MRIGLOBAL, and ) | |
| ALLIANCE FOR SUSTAINABLE ) | |
| ENERGY, LLC, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING MOTION TO TRANSFER

This dispute concerns Plaintiff DesignSense, Inc.'s ("DesignSense") allegations that Defendants MRIGlobal ("MRI") and Alliance for Sustainable Energy, LLC ("Alliance") falsely claimed that they developed design specifications created by Plaintiff. DesignSense claims it delivered the specifications to Defendants pursuant to a subcontract ("the Subcontract") between the parties and that Defendants subsequently falsely claimed authorship. DesignSense is now suing Defendants for a variety of business torts. DesignSense previously sued Defendants in the United States District of Colorado for claims which arguably arise out of the same set of facts.

Now before the Court is Defendant's "Motion to Dismiss Plaintiff's Amended Complaint Or, in the Alternative, to Transfer to the District of Colorado" (Doc. 11). Defendant argues (1) the complaint fails to state a claim, and (2) Plaintiff's tort claims are barred by the doctrine of res judicata. Arguing in the alternative, Defendants contend this case should be transferred to the District of Colorado pursuant to a mandatory forum selection clause in the Subcontract.

Finding that the forum selection clause governs Plaintiff's tort claims and that the statutory factors regulating transfer do not outweigh the forum selection clause, the Court grants Defendants' motion to transfer.

**Background**

On September 4, 2007, DesignSense subcontracted with the National Renewable Energy Laboratory and Defendants Alliance and MRI (collectively these three are "the NREL") to develop the request for proposal ("RFP") used to select a design-build team to construct NREL's research support building. The Subcontract contained a forum selection clause providing that "the appropriate forum for resolution of any dispute or claim pertaining to this subcontract shall be . . . exclusively in Federal District Court; with venue in the United States District Court of Colorado in Denver, Colorado." After DesignSense completed its work, NREL distributed the RFP to potential bidders and posted the RFP on its website.

In late 2011, DesignSense filed suit against Defendants in the District of Colorado ("the Colorado case") claiming NREL violated the Subcontract by distributing and using the RFP without authorization or attribution. DesignSense alleged violations of the Copyright and Lanham Acts, trade secret misappropriation, breach of agreement, and tortious interference. The District of Colorado court dismissed DesignSense's federal claims for failure to state a claim and declined to exercise supplemental jurisdiction over the state law claims; a motion remains pending in that case.

DesignSense subsequently filed this lawsuit in United States District Court for the Western District of Missouri asserting tort claims against Defendants.

**Standard**

The federal statute governing transfer, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party moving for transfer bears the burden of proof and must make a clear showing of the right to transfer. *Ozarks Coca-Cola/Dr. Pepper Bottling Co. v. Coca-Cola Co.*, No. 06-03056-CV-W-GAF, 2006 WL 696461, at *4 (W.D. Mo. March 17, 2006).

Section 1404(a) ennumerates three general categories of factors to consider in deciding a motion to transfer: (1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). But a court is not limited to these factors. In making its determination, the court must make "a case-by-case evaluation of the particular circumstances at hand," considering "all relevant factors." *Id.* A forum selection clause is "'a significant factor that figures centrally in the district court's calculus.'" *Id.* at 697 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Where the parties' contract contains such a provision, the § 1404(a) factors must strongly favor plaintiff's forum choice in order to "outweigh the significance of the agreed-upon forum selection clause." *Terra Int'l*, 119 F.3d at 697.

**Discussion**

**I.     The forum selection clause applies to DesignSense's tort claims.**

Whether a contract's forum selection clause governs tort claims depends upon the parties' intentions as reflected in the wording of the clause and the facts of each case. *Id.* at 693. Where an analysis of the forum selection clause's language does not clearly indicate whether it applies, the Eighth Circuit directs courts to consider the answer to "three generally applicable tests": (1)

3

whether the tort claims ultimately depend on the existence of a contractual relationship between the parties; (2) whether resolution of the claims relates to interpretation of the contract; and (3) whether the tort claims involve the same operative facts as a parallel claim for breach of contract. *Id*. at 693-94. No answer to any of these tests is dispositive. Rather, they are designed to provide information answering the over-arching question whether a forum selection clause applies to a party's tort claims. *Id.* at 694.

The Court finds that the forum selection clause governs Design Sense's tort claims. As an initial matter, the Court finds that although the language of the forum selection clause does not state that it applies to tort claims, its broad wording weighs in favor applying it to Plaintiff's tort claims. The forum selection clause states it governs "any dispute or claim *pertaining* to this subcontract." "Pertain" means "to relate to; to concern." Black's Law Dictionary 1181 (8th ed. 2004). Courts read forum selection clauses using such language broadly, *see*, *e.g.*, *Minn. Supply Co. v. Mitsubishi Caterpillar Forklift Am.*, 822 F. Supp. 2d 896, 912-13 (D. Minn. 2011) (holding forum selection clause which encompassed actions "pertaining" to the contract also covered a claim for tortious interference), more broadly than clauses stating they apply to all claims "arising out of" a contract. *Phillips v. Audia Active Ltd.*, 494 F.3d 378, 389 (2nd Cir. 2007).

Additionally, the answers to the three tests set out in *Terra International* confirm that the forum selection clause should apply to DesignSense's tort claims. First, DesignSense's tort claims ultimately depend upon its contractual relationship with Defendants. The first "background fact" DesignSense alleges is that on or about September 4, 2007, DesignSense signed the Subcontract with MRI. But for their contractual relationship, DesignSense would not have provided the detailed specifications in the RFP, and Defendants could not have committed

4

the tortious acts alleged.  Second, resolution of the tort claims relates to the Subcontract.  Where the tort claims directly involve the entire subject matter of a license agreement, such as in this case where the tort claims turn on the permissible scope of Defendants' distribution and use of the design specifications under the Subcontract, the forum selection clause applies.

Third, DesignSense's tort claims involve the same operative facts as those alleged in the breach of contract claims.  For example, the Second Amended Complaint in the District of Colorado case alleges that on several different occasions Defendants claimed the RFP was their work product.  The Amended Complaint here makes the same allegations, albeit in more detail: It alleges that in November 2011 Defendants' representative told a group that Defendants wrote the detailed specification document contained in the RFP.  The Amended Complaint also alleges Defendants caused confusion in the marketplace by making false and misleading statements that they developed and wrote the RFP's detailed design specifications.

Accordingly, the Court finds the Subcontract's forum selection clause encompasses DesignSense's tort claims.

## II.     The § 1404(a) factors do not outweigh the significance of the forum selection clause.

While the Court's holding that the forum selection clause applies to the tort claims is significant, it not dispositive.  The Court must also consider the § 1404(a) factors, including the convenience of the parties, the convenience of the witnesses, and the interests of justice.  *Terra Int'l*, 119 F.3d at 697.

The convenience of the parties weighs slightly in favor of hearing this case in the Western District of Missouri because both DesignSense and Defendant MRI are Missouri corporations with business operations in the Kansas City area.  Similarly, the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses,

5

and the adequacy of deposition testimony—slightly favors not transferring this case. Although all of the individuals named in the Amended Complaint reside in Colorado and all the events occurred in Colorado, Defendants concede by their silence that some DesignSense's witnesses and at least a few of Defendants' witnesses reside in this district. Both of these factors are relatively insignificant in this case, however, because neither forum is sufficiently inconvenient for the other party; choosing one forum over the other would not inhibit any party's access to any evidence or necessary witnesses. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 922 F. Supp. 1334, 1361 (N.D. Iowa 1996) (discussing the relative weight of each factor in a particular case).

The interests of justice, however, favor transfer. In analyzing the interests of justice, federal courts typically consider (1) judicial economy, (2) the plaintiff's choice, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) any obstacles to a fair trial, (6) conflict of law issues, and (7) the advantage of having a local court determine questions of local law. *Terra Int'l*, 119 F.3d at 696. Judicial economy suggests this case should be sent to the District of Colorado because that court is already familiar with the issues in this action. It has considered two different motions to dismiss, issued a scheduling order, held multiple scheduling conferences, and monitored the parties' discovery. Additionally, since most of Defendants' witnesses reside in Colorado, it will cost more for Defendants to litigate this case in Kansas City than for Plaintiff to fly its relatively few witnesses to Denver. As for the other considerations, the Court finds they do not weigh for or against transfer. For example, both parties will be able to enforce a judgment in either forum, and there is no conflict of law issue that is better litigated in one district than another.

In sum, the Court finds the § 1404(a) factors are split with convenience of the parties and the witnesses slightly favoring the Western District of Missouri, while the interests of justice

6
Case 4:13-cv-00010-DGK   Document 21   Filed 06/25/13   Page 6 of 7

weigh more strongly in favor of the District of Colorado. Given this split, the § 1404(a) factors do not override the significance of the forum selection clause. Consequently, the Court grants the motion to transfer.

## Conclusion

For the reasons discussed above, Defendants' motion to transfer is GRANTED. The Court does not rule on the balance of the motion.

**IT IS SO ORDERED**

Date:   June 25, 2013                             /s/ Greg Kays
                                                  GREG KAYS, JUDGE
                                                  UNITED STATES DISTRICT COURT